# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
|     Plaintiff, | Case No. 2:15-cr-00175-LDG (PAL) |
| v. | **ORDER** |
| LAZAREO JONES, | |
|     Defendant. | |

On June 17, 2015, the United States filed a Criminal Indictment alleging that the defendant, Lazareo Jones, violated 18 U.S.C. §1951(b)(3) by unlawfully attempting to commit a robbery by taking United States currency from an employee of a convenience store on June 19, 2010. Jones moves to dismiss the indictment (#19), arguing that the delay between the date of the alleged offense and the indictment violates his Fifth Amendment right to due process. The government opposes the motion (#20). Having considered the pleadings and arguments of the parties, the Court will grant the motion.

Background

In the early morning hours of June 17, 2010, Peter Stankiewicz and Oscar Caballero were working in a convenience store. According to Stankiewicz, a female entered the store and purchased some items. As she was leaving the store, a shirtless

male exited her vehicle and entered the store.  The man walked to Stankiewicz's register and asked for a pack of cigarettes.  He then came around the counter and reached for the cigarettes, at which time Caballero told the man that he needed to be on the other side of the counter.  The man, who had been smoking, extinguished his cigarette on the floor and then put the cigarette butt in the trash.  He then again reached for a pack of cigarettes.  Stankiewicz pulled the cigarettes from the man, and Caballero approached the man.  The man told Caballero, "Step back or step up," and "I got a pistol and will shoot both you bitches."  Caballero then punched the male, and the two stood ready to fight.  The female then stated, "They're calling the cops," and the man left in the car.

        Caballero provided a more succinct statement of the events, first noting that a shirtless male came around the corner [presumably of the counter] and said something to the effect of "Give me the money out of the safe," and "I have a gun."  Feeling that his life was in danger, Caballero punched the man in the face, and both men put their hands up.  The male then ran out to the car and left.

        In investigating the incident, the police collected a fingerprint from a pack of cigarettes, a fingerprint from the counter, a cigarette butt from the trash, and video surveillance of the incident (which, according to the officer, "shows the [suspect] step on a cigarette & throw it into the business trash").  Despite obtaining the video surveillance, the officer did not check it into evidence, and subsequently lost the tape.  The officer did not collect or impound the pack of cigarettes into evidence.

        The Las Vegas Metropolitan Police Department's Forensic Laboratory performed an analysis of DNA obtained from the cigarette butt.  By report dated June 2011, the laboratory concluded that the sample was consistent with an unknown male.  The report indicates the profile would be searched against local and national DNA databases, and that notification would be provided if there was a match.

        No effort was made to compare either of the collected fingerprints to anyone.

Sometime after November 3, 2014, the federal government collected a DNA sample from Jones pursuant to his conviction for a federal offense. Jones' DNA profile was submitted to the national DNA database in 2015. On March 25, 2015, the LVMPD Forensic Laboratory reported (apparently to the original requesting police officer) a possible match on the national DNA database between Jones and the DNA obtained from the cigarette butt. The laboratory further indicated that an additional swab of Jones' DNA was required to confirm the match. One month later, the officer informed the Forensic Laboratory that the additional swab was "being handled by feds" because "[t]his case is outside the statute of limitations for local police." Apparently, an additional swab was obtained, as the Forensic Laboratory reported on May 26, 2015, that the DNA profile from the recovered cigarette butt was consistent with Jones.

On June 17, 2015, two days shy of the federal five-year statute of limitations, the government indicted the defendant for attempted robbery of U.S. currency.

Analysis

An indictment should be dismissed due to pre-indictment delay when a defendant can show: (1) actual, non-speculative prejudice from the delay, and (2) that the delay, when balanced against the reasons for it, offends "those fundamental conceptions of justice which lie at the base of our civil and political institutions." *United States v. Sherlock*, 962 F.2d 1349, 1353-54 (9th Cir. 1989) (internal citations and quotation omitted). "The greater the length of the delay and the more substantial the actual prejudice to the defendant becomes, the greater the reasonableness and the necessity for the delay will have to be to balance out the prejudice." *United States v. Mays*, 549 F.2d 670, 678 (9th Cir. 1977).

As the defendant notes, the pre-indictment delay could not have been longer. The government filed the indictment two days shy of the five-year statute of limitations for a violation of 18 U.S.C. §1951(b)(3). Jones argues that the government cannot show the delay was reasonable or necessary, because the police collected fingerprints from the

cigarette box and the counter, but did not compare the fingerprints to anyone.  He notes that the police had previously obtained his fingerprints in connection with a 2008 arrest.

The government counters, however, that it indicted the defendant "almost immediately after there was forensic evidence that [the defendant] had committed the crime."  The forensic evidence to which the government refers is the unidentified DNA sample from the cigarette butt that did not result in a possible match on the national DNA database until March 2015.  The match didn't occur until 2015 because Jones' DNA was not collected and submitted to the national database until, and pursuant to, his November 2014 federal conviction.  The government concedes that the fingerprints were not submitted for comparison, but dismisses the failure due to the low priority of the case and the resource management policies of the police.

The reasonableness of the delay between offense and indictment is not measured solely by the length of time between the event establishing the defendant was at the scene of the alleged crime and the indictment.  The reasonableness of the delay must be considered in the light of the period of time between the alleged offense and the indictment, and must be considered in the context of events occurring during that period.  While the DNA match in March 2015 between Jones and the DNA on the cigarette butt provided a new lead regarding the suspect committing the alleged offense, the possible identification of the suspect was not limited to the DNA sample.  The police collected two fingerprints possibly related to the alleged crime.  However, a decision was made to not pursue further investigation of that evidence because, as suggested by the government, the matter had a low priority.

Whether a delay is reasonable is also determined by reference to efforts to mitigate the potential adverse effects of an ongoing delay.  Or, in the context of the present matter, reasonableness is determined by reference not simply to the lack of effort, but in considering the consequences of that lack of effort.  Consistent with the "low priority" given

4

to investigating the underlying incident, the police officer investigating this incident did not make any effort to preserve the pack of cigarettes, an item central to the witness statement of Stankiewicz.  More critically, however, the officer made no effort to preserve the video surveillance of the incident that he had obtained.  The video was not checked into evidence.  A chain-of-custody was never created.  Rather (and consistent with the low priority given to the investigation), the officer misplaced and lost the video surveillance.  Once lost (an event that occurred at some unknown time), prosecution and defense of this matter became limited to memory and the impact of time on memory.

Another factor pertinent to a determination whether the delay was reasonable is the consideration of the matter being prosecuted and the evidence supporting the indictment.  The government indicted the defendant for attempting to rob U.S. currency.  In opposing Jones' motion to dismiss, however, the government never expressly identifies U.S. currency as the object of the robbery.  While Caballero stated that the suspect said words to the effect of "[g]ive me the money out of the safe," the government merely notes "Caballero described an attempted robbery."  As to Stankiewicz, the government is constrained to argue that he "stated the robber attempted to take cigarettes."  As a result, the government does not argue, nor could it reasonably argue, that the two witnesses provided consistent statements as to what the suspect was attempting to rob.

The Court also does not share the government's confidence that Stankiewicz described, "in no uncertain terms," an attempt by a robber to take cigarettes.  While it may be arguable that Stankiewicz was describing a robbery, it is also arguable that Stankiewicz was describing an impatient customer who was attempting to reach the cigarettes he had previously asked for and wanted to buy.  Those efforts were interrupted by a co-worker who, along with the male, escalated the matter to a fight because the customer stepped around the counter to serve himself.

5

Further, though the video surveillance has been lost, the investigating officer wrote in his report that the video shows the suspect extinguishing a cigarette on the floor and then throwing the butt into the trash. That the suspect (as apparently shown on the lost video) took the time, in the middle of the events at issue, to extinguish a cigarette and place the butt into the trash, further suggests that Stankiewicz was not describing a robbery, but a customer impatient to buy his next pack of cigarettes. Even accepting the government's suggestion that Stankiewicz was describing a robbery, the evidence that remains in this case is not only inconsistent as to the object of the robbery, but is most consistent with that object being a pack of cigarettes.

The low priority given this case not only potentially delayed the identification of Jones as a person who was at the scene of the alleged crime, but demonstrated itself in both the lack of effort to preserve evidence and to maintain evidence. The cumulative impact of the initial limited investigation and the failure to collect and preserve evidence greatly shortened the time in which a delay in indictment could be considered reasonable. This delay has occurred in the federal prosecution of a low-priority matter that, arguably, concerns the defendant stepping around a counter to reach for the pack of cigarettes, cigarettes he had just requested of the clerk. In light of these circumstances, the delay in bringing an indictment until two days short of the federal statute of limitations, and nearly two years past the state statute of limitations, was unreasonable.

The Court also concludes that the defendant has been prejudiced by the delay. The most obvious prejudice results from the loss of the video surveillance. The defendant argues the surveillance would be exculpatory. The government counters that the defendant has not identified any actual, non-speculative prejudice, and cannot provide actual proof that the video surveillance would be exculpatory. The Court must note, however, that the lack of any such proof is the result of the lack of care of the investigating police officer to preserve the video surveillance as evidence of the events that occurred on

June 19, 2010. As a result of the loss of the video surveillance, and as a result of the delay in indicting the defendant, the defense of this matter is necessarily limited to memories that are now more than five years old, and the then-recorded statements of the clerks.

As noted previously, however, the recorded statements of the two witnesses disagree even as to the arguable object of the alleged attempted robbery. The only evidence as to the content of the video is consistent with the statement of Stankiewicz, and that statement is more favorable to the defendant than Caballero's statement. The lack of care taken by the police to preserve the video as evidence further suggests that the content of the video would have been more favorable to the defendant than to the prosecution, supporting a determination that the video would have been exculpatory.

In sum, the lack of care and priority given by the police to investigating and preserving evidence suggests the police considered the matter to concern, at most, an event unworthy of further investigation or effort. In light of the totality of the circumstances, including the lack of agreement by the witnesses as to the object of the robbery, the lack of care in preserving evidence, the low priority in investigating the matter, and that the only indication regarding the content of the video suggests the video would support a witness statement that arguably favors the defendant, the Court concludes that the defendant has shown actual, non-speculative prejudice from the delay in indicting him, and that the delay was unreasonable.

Accordingly,

THE COURT **ORDERS** that Defendant's Motion to Dismiss (#19) is GRANTED.

DATED this \_\_10\_\_ day of November, 2015.

_____
Lloyd D. George
United States District Judge

7